UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:22-CV-1956-G |
| $16,900.00 IN UNITED STATES | ) | |
| CURRENCY, | ) | |
| | ) | |
| Defendant *in rem*. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the motions of the plaintiff the United States of America ("the United States" or "the government") (1) to strike the answer of the claimant Johnnie Holmes ("Holmes") for lack of standing; (2) to dismiss; and (3) for summary judgment. For the reasons discussed below, the government's motions for lack of standing and for summary judgment are granted, and its motion to dismiss is denied as moot.

## I.  BACKGROUND

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202, codified at 18 U.S.C. § 983, governs this forfeiture proceeding. *United States v. $92,203.00 in United States Currency*, 537 F.3d 504, 507 (5th Cir.

2008); *see also* Supplemental Rules for Admiralty or Maritime Claims and Asset

Forfeiture Actions in the Federal Rules of Civil Procedure ("Supplemental Rules").[1]

On May 9, 2022, the Homeland Security Investigations Interdiction Group

seized $16,900.00 in United States currency ("the Property") from Holmes at

Dallas/Fort Worth International Airport ("D/FW Airport").  Brief in Support of

United States' Motion for Summary Judgment ("Motion for Summary Judgment")

(docket entry 29) at 1.  The government seeks forfeiture of the Property, asserting

that the quantity of the currency, the concealment of the Property, and "implausible

explanation" regarding the origin of the Property, together with Holmes's last-minute

travel plans to a known source area, nervous demeanor, lack of proof of income,[2]

criminal history, and images and communications extracted from Holmes's cellular

telephones are highly probative of illegal narcotics activity and drug trafficking.  See

generally *id*.; *see also* United States of America's Reply Brief in Support of its Motion

for Summary Judgment ("Reply in Support of Motion for Summary Judgment")

(docket entry 44) at 5-12.  In addition, the government maintains that a certified

narcotics canine's positive alert to the Property is further probative evidence that the

---

[1]       *See* Rule G of the Supplemental Rules ("Supplemental Rule G").

[2]       The government asserts that "Holmes never responded to the United
States' discovery requests, or Motion to Compel, which included questions regarding
Holmes' legitimate income history. . . .  Because there is no evidence to support
Holmes' income history, an adverse inference can be inferred that he did not have
legitimate income."  Motion for Summary Judgment at 10.

Property is the proceeds of narcotics.  *Id*. at 30-31; *see also* Appendix to United States

of America's Brief in Support of its Motion for Summary Judgment ("Appendix in

Support of Motion for Summary Judgment") (docket entry 30) at App'x_0013-

App'x_0015.

The factual bases underlying the seizure are detailed in sworn declarations.  *See*

Appendix in Support of Motion for Summary Judgment at App'x_0001-App'x_0020.

On May 9, 2022, a Homeland Security Investigations Airport Interdiction Task Force

officer ("Task Force officer") at D/FW Airport engaged in a consensual conversation

with Holmes as Holmes waited to board an American Airlines flight to Los Angeles,

California.  Motion for Summary Judgment at 2-3.  Holmes had purchased the

one-way airline ticket the previous evening.  *Id.* at 3; Complaint for Forfeiture

("Complaint") (docket entry 1) ¶ 16.  When asked for the reason for his trip, Holmes

explained that he planned to travel to Los Angeles to pay his rent and return to

Dallas the following day.  Complaint ¶ 16.  A Task Force officer noted that Holmes

appeared nervous, avoided eye contact, and sported a tattoo with the word

"GRAMS" surrounded by marijuana leaves on his left arm.  *Id*. ¶¶ 12, 13.

Holmes wore a backpack, "possessed one carry-on bag that appeared lightly

packed[,]" *id*. ¶ 17, and carried two Apple iPhone cellular telephones, Motion for

Summary Judgment at 4; *see also* Appendix in Support of Motion for Summary

Judgment at App'x_0019.  Holmes denied that he possessed a large amount of

currency.  Complaint ¶ 17.  Holmes consented to a search of his backpack, and the search revealed a large amount of currency wrapped with a rubber band secreted inside the laptop compartment of the backpack.  *Id*. ¶¶ 17, 18.  When a Task Force officer asked Holmes if Holmes carried any more currency, Holmes removed a large amount of currency from his right pants pocket.  *Id*. ¶ 18.  Holmes admitted that "he had approximately $10,000 in his backpack and $7,000 in his pants pocket . . . [and that] he had counted the currency himself."  *Id*.  The total United States currency in Holmes's possession in fact totaled $16,900.00.  *Id*. ¶ 19.  Holmes stated that he had earned the money from three companies but could not show how he obtained the Property.  Motion for Summary Judgment at 3-4; Complaint ¶¶ 20, 21.  K-9 Ferro, a certified narcotics detection canine, positively alerted to the presence of narcotics on the Property.  *Id*. ¶ 28; *see also* Appendix in Support of Motion for Summary Judgment at App'x_0013-App'x_0015.

When a Task Force officer questioned Holmes about Holmes's tattoos, Holmes replied that they were "part of his life[.]"  Complaint ¶ 25.  When further asked if the "GRAMS" tattoo currently was part of his life, Holmes replied that he "smokes marijuana in counties where it is legalized."  *Id*.  A Task Force officer also quizzed Holmes about the two cellular telephones in Holmes's possession.  *Id*. ¶ 23.  Holmes denied that either device contained photographs of narcotics or messages in support of criminal activity and then refused the officer's request to search the

- 4 -

telephones.  *Id*.  A criminal records background check revealed that Holmes has a

criminal history.  *Id*. ¶ 27.

Based on the above facts, Task Force officers informed Holmes that they

would seize the Property and Holmes's cellular telephones.  *Id*. ¶ 29.  Thereafter,

following the issuance and execution of a search warrant for Holmes's cellular

telephones, the government maintains that "[t]he data extracted from Holmes'

cellular telephones is strong evidence that Holmes was going to travel to California to

purchase narcotics with the Defendant Property."  Motion for Summary Judgment at

34.  The government further avers that "[t]he complaint contains numerous images

and communications from Holmes' seized cellular telephones showing his

involvement with significant drug trafficking and manufacturing."  United States'

Motion to Strike Johnnie Holmes' Answer for Lack of Standing ("Motion to Strike")

(docket entry 14) at 2.  The government summarizes the extracted data from

Holmes's cellular telephones, in pertinent part, as follows:

> Video of Holmes' podcast showing him using marijuana
> and displaying bulk cash, along with tens of thousands of
> dollars of jewelry shows his use of a controlled
> substance and display of bulk cash, Exh. 6, which provides
> support that Holmes is involved in drug trafficking.  More
> importantly, the data extracted from the cellular
> telephone seized from Holmes contained several text
> communications and images demonstrating the "ins and
> outs" of buying and selling controlled substances and this
> material further connects the Defendant Property to a
> crime related to controlled substances.

- 5 -

* * *

Particularly, there are multiple images of marijuana and other controlled substances from the data extracted from Holmes' cellular telephones with date stamps from 2021 through 2022.  *The verified Complaint showed images of Holmes' involvement with the manufacturing of marijuana plants (Dkt. 1 at ¶ 32); marijuana being weighed on scales (Dkt. 1 at ¶ 33); Holmes with bulk cash (Dkt. 1 at ¶ 34); money counter (Dkt. 1 at ¶ 35); money ledgers for drug trafficking (Dkt. 1 at ¶ 36); and text communications between Holmes and others showing Holmes involvement in drug trafficking (Dkt. 1 at ¶ 37). . . . Holmes has deemed admitted the facts underlying paragraphs 32 through 37 [of the complaint] because he did not respond to these in his Amended Answer – despite being previously warned that each paragraph must be answered.*  Moreover, there are text communications with several individuals about buying or selling controlled substances, including price, quantity, and quality of the drugs.  A further sampling of the images from Holmes' cellular telephones are at Exhibit 4.  The evidence from the cellular telephones is overwhelming.  As [Task Force] Officer Cortes pointed out regarding the images at Exhibit 4, USA22-USA73 show images relating to illegal controlled substance possession, trafficking, and/or manufacturing.  USA75-94 show images relating bulk cash smuggling relating to drug trafficking, including a number of photographs showing Holmes.  USA95-USA100 show images of firearms.  USA101-USA116 show images of text communications between Holmes and others regarding drug trafficking.  Exh. 1 at App'x at 6.  Based on his training and experience, [Task Force Officer] Cortes then engages in a lengthy and detailed explanation of a handful of the images at Exhibit 4 – showing Holmes significant involvement in drug trafficking, and the United States relies on and incorporates this evidence for summary judgment.  Exh. 1 at App'x at 6-10.

Motion for Summary Judgment at 32-34 (emphasis added); *see also* Complaint ¶ 31

("Data from Holmes' cellphones contain several images showing Holmes'

- 6 -

involvement with drug trafficking.  In addition, data from Holmes' cellphones shows his acquaintance and involvement with other individuals who have also had currency seized at DFW Airport and forfeited for drug trafficking.").

On June 9, 2022, Holmes, represented by attorney Temani Adams ("Adams"), filed an administrative claim with the United States Customs and Border Protection agency.  Motion to Strike at 2.

On September 2, 2022, the government filed a verified civil forfeiture complaint *in rem* against the Property, *see generally* Complaint, and sent a copy of the complaint, via United States First Class mail and FedEx standard overnight delivery, to Adams, Motion to Strike at 2; *see also* FedEx Tracking Receipt ("FedEx Tracking") (docket entry 14-2).  On September 6, 2022, Adams's office received the FedEx mailing.  *See* FedEx Tracking.  The government asserts that the Property is subject to forfeiture to the United States on the ground that the Property represents money furnished or intended to be furnished in exchange for a controlled substance or is a proceed traceable to an illegal exchange for a controlled substance pursuant to 21 U.S.C. § 881(a)(6).[3]  *See* Complaint ¶ 8; Motion for Summary Judgment at 1 n.1; Reply in Support of Motion for Summary Judgment at 1 ("[T]he United States'

_____

[3]    In its complaint, the government asserts that the Property is subject to forfeiture under three theories.  *See* Complaint ¶¶ 6-8.  In its motion for summary judgment, the government stipulates that "[w]hile the Complaint lists multiple forfeiture statutes, the United States is only pursuing summary judgment solely on 21 U.S.C. § 881(a)(6)."  Motion for Summary Judgment at 1 n.1.

- 7 -

evidence showed a cycle of activity in which Holmes sold narcotics and then would use that money to buy more narcotics to again sell.  The undisputed material facts in this case provide a textbook example of forfeiture pursuant to 21 U.S.C. § 881(a)(6).").

On September 24, 2022, Holmes answered but failed to file a verified claim. *See generally* Answer and Affirmative Defenses of Claimant Johnnie Holmes (docket entry 6).  On October 12, 2022, the government warned Adams, via electronic mail and FedEx, that it might move to strike Holmes's answer.  Motion to Strike at 3; *see also* Letter to Adams Dated October 12, 2022 (docket entry 14-1) ("The deadline to file a verified claim was October 7, 2022. . . . Separately, the answer by potential claimant Johnnie Holmes filed at Docket Number 6 is deficient.  Federal Rule Civil Procedure Supplemental Rule G and Rule 8 of the Federal Rules of Civil Procedure require the claimant to admit or deny each factual allegation in separate paragraphs.").

On October 21, 2022, the government moved to strike Holmes's answer for lack of standing to contest the forfeiture.  *See generally* Motion to Strike.  The government argues that "[u]nder Fed. R. Civ. P. Supplemental Rule G(4)(b), Holmes was required to file a verified claim no later than thirty-five days of the date the direct notice of the forfeiture action was sent (September 2, 2022), which deadline for Holmes to file a verified claim was October 7, 2022. . . .  Because Holmes failed

to file a verified claim as required by Rule G(5)(a), Holmes lacks standing, and the Court should strike his answer." *Id.* at 1.  Holmes failed to file a response to the government's motion to strike, but on October 21, 2022, without leave of court, Holmes filed an amended answer, *see* First Amended Answer and Affirmative Defenses of Claimant Johnnie Holmes (docket entry 15), and a verified claim, *see* Verified Claim of Johnnie Holmes (docket entry 16).  The government characterizes Holmes's answer and amended answer as wholly defective.  See, *e.g.*, Motion for Summary Judgment at 20-21 ("Holmes never admitted, denied, or otherwise responded to Paragraphs 32, 33, 34, 35, 36, or 37 of the . . . Complaint."), 33; *see also* Complaint ¶¶ 32-37.[4]

On January 11, 2023, the case failed to settle at a settlement conference held before United States Magistrate Judge Hal R. Ray, Jr.  *See* Minute Order (docket entry 24).

On February 9, 2023, the government moved to compel or, in the alternative, to dismiss Holmes's claim and to strike his answer.  *See generally* United States of America's Motion to Compel, or Alternatively, Motion to Dismiss Potential-Claimant

---

[4]      "Because Supplemental Rule G(5)(b) only addresses the time by which an answer to a forfeiture complaint must be filed and served, the sufficiency of the contents of that answer is governed by Federal Rule of Civil Procedure 8(b)."  *In re $12,000.00 U.S. Currency*, No. 22-117-JWD-EWD, 2023 WL 2254539, at *7 (M.D. La. Feb. 27, 2023) (citation omitted).  *See* FED. R. CIV. P. 8(b).

Holmes [sic] Claim ("Motion to Compel or Dismiss") (docket entry 25). The motion

to dismiss read, in pertinent part, as follows:

> Given Holmes' actions, Holmes is apparently no longer
> interested in pursuing his claim, and it should be dismissed
> pursuant to Fed. R. Civ. P. Supp. Rule G(8) and/or the
> Court's plenary authority. The United States has outlined
> repeated violations of the Federal Rules and Court's Order.
>
> 1.   Holmes has not filed or served Fed. R. Civ. P. 26 Initial
>      Disclosures[.]
>
> 2.   Holmes did not respond to United States' Motion
>      to Strike Answer for Failure to File Claim.
>
> 3.   Holmes filed an untimely verified claim and has not
>      claimed, much less established excusable neglect for
>      the untimely filing.
>
> 4.   Holmes has not responded to First Set of Special
>      Interrogatories[.]
>
> 5.   Holmes has not responded to First Set of Requests
>      for Production[.]
>
> 6.   Holmes has not responded to First Set of Requests
>      for Admissions[.]
>
> And it does not appear that any discovery responses will be
> forthcoming in the near future. Holmes is not interested
> in pursuing his claim and the Court should dismiss his
> claim.

*Id*. at 7-8. Holmes failed to respond to the government's motion to compel or its

motion to dismiss Holmes's claim and to strike his answer. Thus, the government

maintains that "[w]ithout a response, it can be construed that Holmes does not

oppose the motions." United States of America's Consolidated Response in Opposition to Holmes' Amended Response to Continue and Motion for Withdrawal of Counsel ("Consolidated Response") (docket entry 37) at 5.

On April 3, 2023, the government moved for summary judgment against the Property. *See generally* Motion for Summary Judgment. That same day, after the government moved for summary judgment, Holmes moved for a continuance, *see* Amended Claimant's Motion for Continuance (docket entry 32), and Adams moved to withdraw as counsel for Holmes, *see* Temani Adams' Motion to Withdraw (docket entry 33); *see also* Temani Adams' Amended Motion to Withdraw (docket entry 38). The court set an expedited briefing schedule on Holmes's motion for continuance and Adams's motion to withdraw. *See* Order (docket entry 36). The government timely filed a consolidated response to the motions for continuance and to withdraw. *See generally* Consolidated Response. Holmes failed to timely reply to the government's consolidated response. Instead of moving for an extension of time to reply to the government's consolidated response, *after* the court's deadline, Holmes filed a motion for leave to file his reply out of time in which Adams stated that "Mr. Holmes' medical condition renders him bedridden for days at a time [, and] Mr. Holmes' inability to meet with undersigned counsel before the April 13, 2023 deadline, was not an effort to disregard the Court's Order, but was solely due to his medical status." Motion for Leave to File a Reply to United States of America's Consolidated

- 11 -

Response in Opposition to Holmes' Amended Motion to Continue and Motion for
Withdrawal of Counsel (docket entry 39) at 1-2.

The government maintains that Holmes consciously disregarded the court's
order, Holmes could have moved for an extension of time prior to the deadline, and
Holmes's excuse is false. *See generally* United States of America's Response in
Opposition to Holmes' Motion For Leave to File Late Reply ("Response in
Opposition to Motion For Leave") (docket entry 40); see also *id*. at 1 ("[C]onsistent
with Holmes' litigation throughout this case, Holmes once again violated the Court's
order."). The government argues that Holmes's travel history during the month of
April 2023 "strains credulity for any explanation of medical condition preventing
Holmes' from litigating the case." *Id*. at 2. Specifically, as of April 19, 2023, Holmes
had flown approximately 10 times on American Airlines during the month of April
2023. *Id*. at 2-3; *see also* Department of Homeland Security, Homeland Security
Investigations, Report of Investigation Dated April 18, 2023 ("ROI") (docket entry
40-2), *attached to* Response in Opposition to Motion For Leave, at 3 ("[B]etween
January 1, 2023, and April 15, 2023, HOLMES had traveled approximately 40 times
with American Airlines. Between April 1, 2023, and April 18, 2023, HOLMES had
traveled approximately 10 times."). Most critically, however, the government avers
that "[d]espite the alleged critical assistance that Holmes could provide for any
response by the United States on the motions, Holmes nevertheless booked a flight

to Los Angeles during that period to be absent during that period."  United States of

America's Supplemental Response in Opposition to Holmes' Motion For Leave to

File Late Reply (docket entry 41) at 2.  Specifically, the government contends as

follows:

> On April 9, 2023, after the Court's order on April 4,
> Holmes booked a flight from DFW Airport to Los Angeles
> that departed on April 10.  On April 10, 2023, Holmes
> booked a return flight to DFW Airport from Los Angeles
> that departed Los Angeles on April 12, 2023 at 6:57 a.m.
> and arrived at DFW Airport at 11:58 a.m. on April 12,
> 2023.

*Id*.

On April 16, 2023, the day before Holmes filed his motion for leave to file a

reply out of time to the government's consolidated response, Task Force officers at

D/FW Airport encountered Holmes on a gate jet bridge where an American Airlines

flight bound for Los Angeles was boarding.  ROI at 2-3.  During this encounter, Task

Force officers "observed [Holmes] walking about without any hindrance, assistance,

or any expressions of pain or illness."  *Id*. at 3. Officers determined that Holmes was

carrying $10,000 in $20 bundles of cash which the government avers "is how drug

traffickers transport currency."  Response in Opposition to Motion For Leave at 2; *see

also* ROI at 2-3; *id*. at 3 ("HOLMES was asked why he didn't wait to pull the

currency out of a bank in California and HOLMES did not have an answer.").

Holmes told the officers that he was flying to Los Angeles with a female companion

"to 'party' for her birthday."  Response in Opposition to Motion For Leave at 2 (citing ROI at 3).[5]

The government moves (1) to strike Holmes's answer for lack of standing; (2) to dismiss; and (3) for summary judgment and avers that "[h]ere, Holmes has sought judicial review of the seizure and yet has entirely failed to prosecute his claims[,]" Consolidated Response at 16.

## II.  ANALYSIS

### A.  Motion to Strike

Pursuant to Supplemental Rule G(8)(c)(I), "[a]t any time before trial, the government may move to strike a claim or answer:  (A) for failing to comply with Rule G(5) or (6), or (B) because the claimant lacks standing."  FED. R. CIV. P. SUPP. R. G(8)(c)(i)(A), (B).  The government moves to strike Holmes's answer for lack of statutory standing because Holmes failed to file a verified claim as required by Supplemental Rule G(5)(a).  *See generally* Motion to Strike.  Holmes failed to file a response to the motion.  See *In re $12,000.00 U.S. Currency*, 2023 WL 2254539, at *4 ("[The claimant] failed to oppose the United States' motion to strike her claim and answer and thus has waived any argument to the contrary.  Consequently, the

---

[5]        Though it is apparent to the court that Holmes knew that his reply to the government's consolidated response would not be timely filed, the court will grant Holmes leave to file his reply to the government's consolidated response and has considered the reply.

Court could dismiss her claim and answer on this ground alone.").  The government also contends that neither Holmes's answer nor amended answer comply with the requirements of Supplemental Rule G(5) and Federal Rule of Civil Procedure 8(b). *See* Motion to Strike at 6 n.3; Motion for Summary Judgment at 20-21. Alternatively, the government "requests that the Court dismiss Holmes' claim and strike his answer given the repeated failures to follow the Federal Rules and the Court's orders."  Motion to Compel or Dismiss at 10.

1. *CAFRA Procedural Rules*

Under CAFRA, "[i]n any case in which the Government files in the appropriate United States district court a complaint for forfeiture of property, any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims . . . ."  18 U.S.C. § 983(a)(4)(A).[6] Supplemental Rule G(5)(a) provides, in pertinent part, as follows:

> (i) A person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending.  The claim must:
>
> > (A) identify the specific property claimed;

---

[6]     "[Section] 983(a)(4)(A) and Rule G require a verified claim in the judicial-forfeiture action even if an administrative claim was previously filed." *United States v. $30,000.00 US Currency and $5,000.00 US Currency*, No. H-12-0471, 2012 WL 12905788, at *1 (S.D. Tex. July 24, 2012).

(B) identify the claimant and state the
claimant's interest in the property;

(C) be signed by the claimant under penalty
of perjury; and

(D) be served on the government attorney
designated under Rule G(4)(a)(ii)(C) or
(b)(ii)(D).

(ii) Unless the court for good cause sets a different time, the
claim must be filed:

(A) by the time stated in a direct notice sent under
Rule G(4)(b) . . . .

FED. R. CIV. P. SUPP. R. G(5)(a).

Supplemental Rule G(4)(b), in turn, provides as follows:

(b) *Notice to Known Potential Claimants*.

(i) *Direct Notice Required*.  The government must send
notice of the action and a copy of the complaint to any
person who reasonably appears to be a potential claimant
on the facts known to the government before the end of
the time for filing a claim under Rule G(5)(a)(ii)(B).

(ii) *Content of the Notice*.  The notice must state:

(A) the date when the notice is sent;

(B) a deadline for filing a claim, at least 35
days after the notice is sent;

(C) that an answer or a motion under Rule 12
must be filed no later than 21 days after filing
the claim; and

> (D) the name of the government attorney to
> be served with the claim and answer.

FED. R. CIV. P. SUPP. R. G(4)(b).

Supplemental Rule G(5)(b) provides that "[a] claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim." FED. R. CIV. P. SUPP. R. G(5)(b).

### 2. *Application*

"'[A] party seeking to challenge the government's forfeiture of money or property used in violation of federal law must *first* demonstrate an interest sufficient to satisfy the court of its standing to contest the forfeiture'." *United States v. $321,470.00, United States Currency*, 874 F.2d 298, 303 (5th Cir. 1989) (emphasis in the original, citation omitted); see also *In re $12,000.00 U.S. Currency*, 2023 WL 2254539, at *4 ("To meet this burden and establish statutory standing, a claimant must adhere to the procedural requirements set forth in the Supplemental Rules; to establish Article III standing, a claimant must establish a 'colorable' interest in the property.").  The government argues that "[u]nder Fed. R. Civ. P. Supplemental Rule G(4)(b), Holmes was required to file a verified claim no later than thirty-five days of the date the direct notice of the forfeiture action was sent (September 2, 2022), which deadline for Holmes to file a verified claim was October 7, 2022. . . . Because Holmes failed to file a verified claim as required by Rule G(5)(a), Holmes lacks standing, and the Court should strike his answer."  Motion to Strike at 1.

- 17 -

The record reflects that Holmes failed to comply with Supplemental Rule G(5).  In forfeiture suits, courts require "strict compliance" with the requirements and deadlines for the filing of an answer and a claim set forth in Supplemental Rule G.  *United States v. Real Property Located at 14301 Gateway Boulevard*, *El Paso County Texas*, 123 F.3d 312, 313 (5th Cir. 1997) (per curiam); see also *United States v. One 2010 River Birch Mobile Home Model No. 3202-1*, No. 2:13CV291 DPJ-FKB, 2014 WL 5148598, at *2 (S.D. Miss. Oct. 14, 2014) ("Though [the claimants] did file an answer, courts have consistently held that the filing of an answer does not excuse a claimant's failure to file a claim.").  Holmes failed to respond to the government's motion to strike his answer.  Instead, without offering a reason for the court to deviate from the strict compliance required by Supplemental Rule G(5)(b) or moving for an extension of time to file a verified claim, Holmes filed an amended answer and a verified claim outside of the period allowed by statute.

"When a claimant fails to file a verified statement of interest according to the rules, the court may strike the answer and enter default."  *United States v. $49,660 U.S. Currency*, No. H-04-0673, 2005 WL 8179550, at *3 (S.D. Tex. Aug. 31, 2005) (citing cases); see also *United States v. $80,760.00 in U.S. Currency*, 781 F. Supp. 462, 470 (N.D. Tex. 1991) (Belew, J.) ("[I]f claimants never attempt to assert their interest or fail to respond to the government's motions, strict adherence to [Supplemental Rule G(5)(b)] is appropriate."), *aff'd*, 978 F.2d 709 (5th Cir. 1992);

*United States v. One 2002 Dodge Ram 1500 Quad-Cab Truck VIN:*

*3D7HU18ZX2G145745*, No. 3:06-CV-0184-L, Findings, Conclusions

and Recommendation of the United States Magistrate Judge (docket entry 13) (N.D.

Tex. Oct. 24, 2006) (Sanderson, M.J.) at 2 (The claimant "filed no response to the

government's motion in an effort to show any basis for not striking her claim."),

*report and recommendation adopted*, 2007 WL 1815684 (N.D. Tex. June 25, 2007)

(Lindsay, J.).  Thus, Holmes's failure to timely file a verified claim left him with no

standing to contest the forfeiture.  However, "[a] court has discretion in appropriate

circumstances to depart from the strict construction required by Rule G.  The Court

may excuse a claimant's procedural default in the 'appropriate circumstances' or

where certain mitigating factors are present."  *United States v. $100,641.06 U.S.*

*Currency*, No. 13-5566, 2014 WL 6896035, at *5 (E.D. La. Dec. 8. 2014) (citations

omitted); see also *id*. ("However, Claimants fail to identify any special or extenuating

circumstances that warrant relaxation of the Supplemental Rules.").  "In making such

a determination, the court should consider factors including when the claimant

became aware of the seizure; whether the government encouraged the delay; the

reasons proffered for the delay; whether the claimant has advised the court and the

government of its interest in the defendant property before the claim deadline;

whether the government would be prejudiced by allowing the late filing; the

sufficiency of the answer in meeting the basic requirements of the verified claim; and

whether the claimant timely petitioned for an enlargement of time." *United States v. $49,660 U.S. Currency*, 2005 WL 8179550, at *4 (citation omitted); see also *United States v. $80,760.00 in U.S. Currency*, 781 F. Supp. at 470.  "If the failure to comply with Rule G is based on the timing of the filing, 'the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect.'" *United States v. $40,000.00 United States Currency*, No. 1:22CV99-LG-RPM, 2022 WL 4110911, at *2 (S.D. Miss. Sept. 8, 2022) (quoting *United States v. $48,880, More or Less, in United States Currency,* No. 6:15-CV-364-RP, 2017 WL 1493705, at *3 (W.D. Tex. April 26, 2017)).  The government argues that "there are no circumstances here that would establish excusable neglect[,]" Motion to Strike at 8, and Holmes has yet to advance a single argument refuting this contention.  *See* Consolidated Response at 3 ("Holmes never responded to the motion to strike nor provide any explanation of why the untimely claim satisfied excusable neglect . . . .").

Moreover, Holmes neglected to answer the government's special interrogatories as required by Supplemental Rule G(6).  *See* Fed. R. Civ. P. Supp. R. G(6)(b); *see also* Fed. R. Civ. P. Supp. R. G(8)(c)(i)(A); *United States v. $15,000.00 in U.S. Currency*, No. 1:11CV97HSO-JMR, 2012 WL 3000649, at *2 (S.D. Miss. July 23, 2012) ("Rule G(8)(c) allows the government to move to strike a claim . . . if the claimant fails to timely respond to the interrogatories. . . . It is evident from the record that

- 20 -

[the claimant] is not interested in either pursuing his claim or otherwise complying with the required deadlines. . . . [T]he Court concludes that because [the claimant] has failed to comply with the requirements of the Supplemental Rules, the Government's Motion to Strike Verified Claim and Answer should be granted.").

Here, Holmes has not filed a response to the government's motion to strike or the government's motion to compel discovery or alternatively to dismiss his claim and has offered no explanation, excuse, or extenuating circumstance for his failure to file a timely verified claim.  See *United States v. One 2010 River Birch Mobile Home*, 2014 WL 5148598, at *2 ("[T]he result is unfortunate, but the fact that these claimants engaged and relied on an attorney does not excuse their failure to file a claim as required by the [Supplemental] rules.") (citing cases); see also *United States v. $49,000 Currency*, 330 F.3d 371, 378-79 (5th Cir. 2003); *In re $12,000.00 U.S. Currency*, 2023 WL 2254539, at *6.

The court finds that Holmes failed to comply with Supplemental Rules G(5) and G(6).  Thus, Holmes lacks statutory standing to contest this civil forfeiture proceeding.  Accordingly, the government's motion to strike Holmes's answer is granted, and Holmes's answer and amended answer should be stricken from the record for failure to comply with the requirements of Supplemental Rule G. Moreover, assuming *arguendo* that Holmes has standing to contest the forfeiture under the authority noted above, the government nonetheless would be entitled to

- 21 -

summary judgment.  See *United States v. $49,660 U.S. Currency*, 2005 WL 8179550, at *4, *9.

### B.  Motion for Summary Judgment

#### 1.  *Evidentiary Burdens on Motion for Summary Judgment*

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a), (c)(1).[7]  A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").  To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving

---

[7]    Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

party must show that the evidence is sufficient to support the resolution of the material factual issues in its favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986).

2. *Summary Judgment in a Civil Forfeiture Action*

Under CAFRA, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture . . . ." 18 U.S.C. § 983(c)(1). Further, where "the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." *Id*. § 983(c)(3). The government may utilize direct or circumstantial evidence to establish this connection. *United States v. $238,500.000 (Two Hundred Thirty-Eight*

*Thousand Five Hundred Dollars) in United States Currency*, No. 4:14-CV-03353, 2015

WL 12551092, at *3 (S.D. Tex. June 30, 2015) (citing *United States v. 2004 Ferrari*

*360 Modeno*, 544 Fed. Appx. 545, 545 (5th Cir. 2013) (per curiam) (substantial

connection established with circumstantial evidence)).  "[C]ourts may no longer rely

on hearsay (absent an exception to the hearsay rule) when deciding the merits of a

civil forfeiture proceeding brought under CAFRA.  Instead, any affidavits submitted

by the parties must be based on personal knowledge."  *United States v. $92,203.00 in*

*United States Currency*, 537 F.3d at 510.  If the government proves that (1) the

property is subject to forfeiture, and (2) a substantial connection exists between the

property and the commission of a criminal offense, see *id.* at 508-09 (citing 18 U.S.C.

§ 983(c)(1), (c)(3)), the burden then shifts to the claimant to prove that he is an

innocent owner by a preponderance of the evidence, see *id*. at 509 (citing 18 U.S.C.

§ 983(d)(1)).  The government may "use evidence gathered after the filing of a

complaint for forfeiture to establish, by a preponderance of the evidence, that

property is subject to forfeiture . . . ."  18 U.S.C. § 983(c)(2).  The government

moves for summary judgment against the Property and contends that Holmes cannot

be an innocent owner of the Property.  *See generally* Motion for Summary Judgment.

Here, the government seeks forfeiture pursuant to 21 U.S.C. § 881(a)(6).

Section 881(a)(6) provides for the forfeiture to the United States of "[a]ll moneys,

negotiable interests, securities, or other things of value furnished or intended to be

furnished by any person in exchange for a controlled substance or listed chemical in violation of [Title 21 and] all proceeds traceable to such an exchange . . . ." 21 U.S.C. § 881(a)(6); *see also* Complaint ¶ 8. The government maintains that "the undisputed material facts demonstrate by a preponderance of the evidence that the Defendant Property was substantially connected to illegal drug trafficking [, and that] Holmes intended to use them to buy controlled substances in California, and they had been earned through Holmes selling controlled substances." Motion for Summary Judgment at 37. Additionally, the government moves for summary judgment as "Holmes has failed to respond to the United States' requests for information regarding ownership, source, and innocence of the Defendant Property." *Id*. at 20.

In determining whether the government has carried its burden to show the property is subject to forfeiture, the court must evaluate the totality of the circumstances in the case, "not a minute parsing of each item of information[.]" *United States v. One 1987 Mercedes 560 SEL*, 919 F.2d 327, 331 (5th Cir. 1990); see also *id*. ("It is not necessary that the government trace the property to a particular drug transaction.") (citation omitted); *United States v. $12,000.51 in U.S. Currency*, No. 2:09-CV-0279-J, 2010 WL 3835258, at *2 (N.D. Tex. Sept. 29, 2010) (Robinson, J.) (citing cases).

- 25 -

Once the government meets its burden, the burden shifts "to [the] claimant to prove by a preponderance of the evidence that the money used to purchase the properties in question came from an independent, non-drug-related source." *United States v. One 1980 Rolls Royce, VIN # SRL 39955*, 905 F.2d 89, 90 (5th Cir. 1990) (citation omitted); *see also* 18 U.S.C. § 983(d)(1).  An "innocent owner" is an owner who "(i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property."  18 U.S.C. § 983(d)(2)(A).  The innocent owner defense is an affirmative defense that must be pleaded in a civil forfeiture action or is waived.  *United States v. 89.9270303 Bitcoins*, No. SA-18-CV-0998-JKP, 2021 WL 4307375, at *10 (W.D. Tex. Sept. 22, 2021). The government asserts that Holmes waived the innocent owner defense because he failed to affirmatively plead the defense, and Holmes did not respond to this assertion.  *See* Motion for Summary Judgment at 35; Reply in Support of Motion for Summary Judgment at 3; *see also* Claimant's Response to Plaintiff's Motion for Summary Judgment ("Response to Motion for Summary Judgment") (docket entry 42).  Additionally, the government maintains that Holmes cannot be an innocent owner because he "bought and then sold controlled substances and intended to perpetuate that cycle with the . . . Property."  Motion for Summary Judgment at 1; see also *id*. at 36-37.

- 26 -

3.  *Application*

The government has adduced ample evidence to satisfy its summary judgment

burden.  The totality of the circumstances and of the record, including an

overwhelming number of images, communications, and contacts obtained from

Holmes's cellular telephones depicting ongoing involvement in illegal drug trafficking,

the quantity of the currency concealed and bundled in rubber-banded stacks, a

positive alert by a certified narcotics detection canine, Holmes's demeanor and

inconsistent statements, lack of a legitimate explanation for the origin of the currency

seized or of evidence to support Holmes's income history, as well as Holmes's travel

history and uncontradicted declarations of Task Force officers, establishes a

substantial connection between the Property and illegal drug activity.[8]  See *United*

*States v. $25,000 in U.S. Currency*, No. 3:23-CV-0456-B-BK, 2023 WL 4494773, at

*3 (N.D. Tex. June 23, 2023) (Toliver, M.J.) (totality of circumstances included

"attempt[] to use the federal aviation system to transport a large amount of cash,

which is not typical of legitimate airport travelers; . . . evasive statements about . . .

lack of luggage and travel plans; . . .a trained canine positively alerted to the odor of

narcotics in [a] backpack; . . . [currency] had been bundled in a manner consistent

---

[8]      In addition, Holmes failed to respond to the government's assertion that
the "$10,000 in $20 dollar bundles" found in Holmes's possession at D/FW Airport
on April 16, 2023, "is how drug traffickers transport currency."  Response in
Opposition to Motion For Leave at 2.  *See* 18 U.S.C. § 983(c)(2).

with other drug traffickers previously intercepted at DFW [Airport]; . . . fail[ure] to provide a credible explanation regarding the source of the Property and its intended use . . . ; . . . possession of multiple cellphones, which is common practice for drug traffickers; . . . cryptic text messages on [the] cellphones indicated . . . inten[t] to engage in interstate drug trafficking; . . . cellphone data revealed multiple one-day trips between Dallas and Los Angeles; and . . .criminal history includes arrests and convictions for felony drug trafficking offenses[]"), *report and recommendation adopted*, 2023 WL 4494356 (N.D. Tex. July 12, 2023) (Boyle, J.); *United States v. $89,980 United States Currency*, No. 2:11-CV-0309, 2012 WL 6020041, *5-*7 (S.D. Tex. Nov. 9, 2012), *report and recommendation adopted*, 2012 WL 6020525 (S.D. Tex. Nov. 30, 2012); see also *United States v. $37,603.00 in US Currency*, No. 4:20-CV-0222, 2021 WL 3013337, at *5 (S.D. Tex. July 16, 2021); *United States v. $238,500 in United States Currency*, 2015 WL 12551092, at * 4.  This evidence, coupled with Holmes's failure to respond to the government's discovery requests,[9] as well as the

─────────────

[9]     Under Supplemental Rule G(6), "[t]he government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed. . . .  Answers or objections to these interrogatories must be served within 21 days after the interrogatories are served." FED. R. CIV. P. SUPP. R. G(6)(a), (b).  On January 9, 2023, the government sent Holmes via Adams, by certified mail and electronic mail, sets of special interrogatories, requests for production, and requests for admissions with deadlines of 21 days, 30 days, and 30 days respectively. *See* Appendix in Support of Motion for Summary Judgment at App'x_0137-App'x_0170.  The first set of special interrogatories included twenty special

(continued...)

- 28 -

government's motions to strike, compel, and dismiss, lead the court to the conclusion

that the government has met its burden and has established, by a preponderance of

the evidence, that the Property is subject to forfeiture, and that a substantial

connection exists between the Property and an exchange for a controlled substance or

is a proceed traceable to an illegal exchange for a controlled substance.  *See* 18 U.S.C.

§ 983(c); 21 U.S.C. § 881(a)(6).

Because the government has met its burden, the burden shifts to Holmes to

prove, by a preponderance of the evidence, that he is an innocent owner of the

Property.  *See* 18 U.S.C. § 983(d)(1).  Holmes has failed to introduce any evidence to

raise a genuine issue of material fact as to whether the Property is subject to

forfeiture[10] and has failed to assert an innocent owner defense or respond to the

---

[9](...continued)

interrogatories.  See, *e.g.*, *id.* at App'x_0141 ("**SPECIAL INTERROGATORY NO. 7**:
Identify with specificity the person or persons from who you obtained the Claimed
Asset, and state the names, addresses, and telephone numbers of that person or
persons.  If all or part of the $16,900.00 was withdrawn from a financial institution,
state the name of the financial institution and the date and time of withdrawal.").
See *United States v. One Hundred Seventy-Nine Thousand Dollars in United States
Currency in JPMorgan Chase Bank Safe Deposit Box in the Name of Travis James*, No. 3:18-
664-RLB, 2021 WL 4497475, at *7-*8 (M.D. La. Sept. 30, 2021) (claimant
submitted no evidence to verify source of income its relation to seized currency); see
also *United States v. $78,882.00 in U.S. Currency*, No. H-09-4068, 2011 WL 864808,
at *1 (S.D. Tex. Mar. 10, 2011) ("Claimants failed to respond to Plaintiff's Requests
for Admission, causing the matters to be deemed admitted pursuant to Rule 36(a)(3)
of the Federal Rules of Civil Procedure."), *aff'd*, 464 Fed. Appx. 382 (5th Cir. 2012).

[10]     In support of his response to the government's motion for summary
judgment, Holmes offered a single one-page exhibit.  *See* Exhibit A, *attached to*
(continued...)

government's assertion that he is not entitled to the defense. *United States v. 89.9270303 Bitcoins*, 2021 WL 4307375, at \*10 ("Unless specifically pled, an affirmative defense is waived."). Thus, the court concludes that Holmes has failed to meet his burden to establish that he is an innocent owner of the Property by a preponderance of the evidence.

Accordingly, even if assuming *arguendo* that Holmes has standing to contest forfeiture of the Property, the court grants the government's motion for summary judgment as the government has established a substantial connection exists between the Property and illegal drug activity by a preponderance of evidence and is property subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6). *See* 21 U.S.C. § 881(a)(6); 18 U.S.C. § 983(c).

---

[10](...continued)
Response to Motion for Summary Judgment. The government challenges the validity of Holmes's summary judgment evidence and moves to strike the evidence because (1) Holmes failed to provide the document or any response to the government's discovery requests in violation of FED. R. CIV. P. 37(c); (2) the document is not competent summary judgment evidence; and (3) the document is not relevant under FED. R. EVID. 401(b). *See* Reply in Support of Motion for Summary Judgment at 8 n.7. Holmes failed to respond to the motion. The court is persuaded by the government's arguments that the exhibit violates FED. R. CIV. P. 37(c) and is not competent summary judgment evidence. *See* FED. R. CIV. P. 37(c), 56(e); see also *Duplantis v. Shell Offshore, Inc*., 948 F.2d 187, 191 (5th Cir. 1991) ("It has long been settled law that a plaintiff must respond to an adequate motion for summary judgment with admissible evidence."). Accordingly, the government's motion to strike exhibit A attached to the claimant's response to the government's motion for summary judgment is granted.

III.  CONCLUSION

For the reasons stated above, the court finds that Holmes lacks statutory standing and alternatively awards summary judgment on the government's forfeiture claim.  Accordingly, the government's motions to strike for lack of standing and for summary judgment are **GRANTED**, and its motion to dismiss is **DENIED** as moot. It is therefore **ORDERED** that $16,900.00 in United States currency seized on or about on May 9, 2022, is hereby **FORFEITED** to the United States pursuant to 21 U.S.C. § 881(a)(6) and all rights, title, and interest in said currency and property is vested in the United States.

**SO ORDERED**.

September 22, 2023.

**A. JOE FISH**
**Senior United States District Judge**